UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————

LUCILLE J. SMITH, on behalf of J.H.,

                    Plaintiff,

          v.                              09-cv-01414
                                          (WGY)
CAROLYN W. COLVIN[1],
Commissioner, Social Security
Administration,

                    Defendant.

———————————————————

WILLIAM G. YOUNG, United States District Judge[2]

**DECISION and ORDER**

## I.   INTRODUCTION

          Lucille J. Smith ("Smith") brings this action on behalf of

J.H.,[3] a minor of whom Smith has legal custody, pursuant to

sections 205(g) and 1631(c)(3) of the Social Security Act (the

"Act"), 42 U.S.C. §§ 405(g), 1383(c)(3).  Smith is seeking

judicial review of the final decision of the Commissioner of

———————————————————

          [1] Carolyn W. Colvin, the now-Acting Commissioner of the
Social Security Administration ("SSA"), has replaced former SSA
Commissioner Michael J. Astrue in the caption.

          [2] Of the District of Massachusetts sitting by designation.
Reassignment Order, ECF No. 22.

          [3] To protect the privacy of this minor, and in accordance
with Federal Rule of Civil Procedure 5.2 (a), the claimant's name
is abbreviated to its initials.

1

Social Security (the "Commissioner") that denied J.H.'s claims for Social Security Supplemental Security Income ("SSI"). Compl. ¶ 1, ECF No. 1. Smith challenges the decision of the Administrative Law Judge (the "hearing officer") denying J.H.'s application for SSI on the basis that J.H. was not disabled within the meaning of section 1614(a)(3)(C) of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(C).

Smith requests that this Court reverse the Commissioner's decision and award J.H. SSI, or alternatively to remand the case to the Commissioner for a new hearing on the question of whether J.H.'s medical condition rendered her disabled within the meaning of the Act. Compl.

The Commissioner requests that this Court affirm the hearing officer's decision. Answer, ECF No. 9.

**A.   Procedural Posture**

Smith, on J.H.'s behalf, applied for SSI on October 3, 2006. Compl. ¶ 5. She alleges that J.H. has been continuously disabled from April 11, 2003 to the present. Id. ¶ 11. J.H.'s application for SSI was denied on March 8, 2007. Admin. R. at 67-70, ECF No. 11. On April 4, 2007, Smith filed a timely written request for a hearing. Id. at 71. On April 9, 2009, the hearing officer held a hearing in Binghamton, New York, over which he presided via video conference from Syracuse, New York. Id. at 24, 25-65, 91. Smith and J.H. testified at the hearing.

2

Id. at 30.  The hearing officer held the record open until April 30, 2009, and granted an extension to submit additional evidence by May 23, 2009.  Id. at 8.  The hearing officer issued an unfavorable decision on July 27, 2009, id. at 5, and Smith filed a timely request for review, which the Appeals Council denied on November 4, 2009, id. at 1.  On December 21, 2009, Smith filed this action in federal court to review the Commissioner's decision.  Compl.

### B.   Factual Background

The claimant, J.H., currently is a sixteen-year-old adolescent who first sought SSI when she was a school age child. Admin. R. at 11.  During early childhood, J.H.'s emotionally ill mother subjected her to emotional and physical abuse.  Id. at 370.  The medical record also indicates that she was exposed to alcohol and drugs while in utero.  Id. at 11.  Now, J.H. is living with her aunt, Smith, who also is her legal guardian.  Id. at 30.  J.H. attends school and has not engaged in substantial gainful activity since the alleged onset of disability on October 3, 2006.  Id. at 11.

The Tioga County Department of Mental Hygiene ("Tioga County") initially evaluated J.H. on August 26, 2003, where she presented with symptoms of aggressive and oppositional behavior, anxiety, and tantrum type behaviors.  Id. at 366.  Since then, the Tioga County staff has regularly treated J.H. from August

3

2003 through February 18, 2009. <u>Id.</u> at 428-37.   J.H. has also received mental health counseling sessions, and Dr. Chong Taek Lee ("Dr. Lee") and Dr. Florante Tinio ("Dr. Tinio"), Tioga County's staff psychiatrists, treated her on a regular basis. <u>Id.</u> at 369-78.   After every consultation, Dr. Tinio rated J.H.'s condition on the Global Assessment of Functioning ("GAF") Scale, an instrument for reporting the psychiatrist's judgment of the patient's overall level of functioning and ability to carry out activities of daily living.[4]   J.H.'s GAF scores ranged from 50 in February of 2006 to 45 in November 2006, and 40-45 in January 2008.   <u>Id.</u> at 371, 373, 386.

Furthermore, Dr. Vanessa Gregory ("Dr. Gregory"), and Dr. Ian Stuppel ("Dr. Stuppel"), both at Lourdes Hospital, frequently treated J.H. for her mental health issues from September 13, 2005, through 2006.   <u>Id.</u> at 348-57.

On March 22, 2004, Dr. Lee diagnosed J.H. with Attention Deficit Hyperactivity Disorder ("ADHD"), and J.H. has since received medication (currently Focalin) to relieve some of her symptoms associated with this disease.   <u>Id.</u> at 11.   J.H. had psychological testing on October 24, 2006, to rule out a learning

---

[4] The GAF scale ranges from 1 to 100; the higher the number, the higher the level of functioning it describes. "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'"   <u>Pollard</u> v. <u>Halter</u>, 377 F.3d 183, 186 n. 1 (2d Cir. 2004).

4

disorder; specifically, an EEG and MRI of the brain were performed and showed that J.H.'s brain worked within normal limits. Id. at 420-21. She also completed the Wechsler Intelligence Scale for Children -- Fourth Edition ("WISC-IV") IQ test, which indicated that overall she functioned at a low average range. Id. at 268-72. On October 16, 2007, Dr. Louis Pellegrino ("Dr. Pellegrino"), conducted a one-time evaluation of J.H. and diagnosed her with alcohol-related neurodevelopmental disorder, learning disability, sensory integration dysfunction, mood instability with aggressiveness, adjustment disorder, and posttraumatic stress disorder ("PTSD"). Id. at 385. Dr. Pellegrino also indicated that J.H. exhibited characteristics of Asperger disorder but did not have the "deep-seated communication difficulties and obsessive interests that are frequently associated with that condition." Id. at 384.

J.H.'s health issues were further evaluated by consultative examiner Dennis Noia, Ph.D. ("Dr. Noia") on December 7, 2006, who diagnosed J.H. with bipolar disorder not otherwise specified, oppositional defiant disorder ("ODD"), and provisional PTSD. Id. at 303-06. State Agency review physician Dr. Karen Prowda ("Dr. Prowda") evaluated the medical record and opined that J.H.'s impairments are learning disability, bipolar disorder, behavioral problems, ODD and PTSD which she considered "severe." Id. at 313-18.

5

J.H. receives accommodations in her regular classroom under section 504 of the Rehabilitation Act of 1973.  Id. at 265-67. Her Individualized Education Program ("IEP") provides for additional support during class and test modifications.  Id.  At the time of the administrative hearing, J.H. was in a class of thirteen students with two aides to assist her teacher.  Id. at 12.

J.H. shows aggressive, tantrum-like behavior.  She does so especially at home with her aunt when asked to undertake certain tasks she does not want to do.  Id. at 372.  She has previously endangered herself and her aunt when she was enraged; for example, she ran in front of a moving truck, injured her aunt, and damaged objects.  Id. at 346-47, 370, 379.  To help her cope with her rage, J.H. takes Vistaril and Clonidine as needed.  Id. at 38-39.

Both J.H. and Smith testified at length with respect to J.H.'s ability to control her rage and show remorse for her behavior.  Id. at 33-34, 53-54, 56-58.  Smith acknowledged that J.H.'s anger fits occurred less often in the year before the hearing.  Id. at 35.  The last tantrum that required police intervention happened eight months before the hearing.  Id. at 33-35.  According to Smith, J.H. mainly acts out at home but is able to compose herself at school.  Id. at 37-38.  The details of the transcript of the hearing are hereby incorporated into the

factual background.

J.H. does not suffer from physical impairments and enjoys pastimes like cheerleading and playing in a band.  Id. at 276.

## II.  LEGAL STANDARD

As the federal district court for the judicial district in which Smith resides, this Court has "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Laven v. Astrue, 1:10-CV-01360 (NPM), 2011 WL 6318360, at *3 (N.D.N.Y. Dec. 15, 2011) (McCurn, J.).

### A.   Standard of Review

With respect to evidence, the federal district courts have the same standard of review for social security benefits as do the courts of appeals.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).  Unless unsupported by substantial evidence, the factual findings of a hearing officer are conclusive.  Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation mark omitted).  Substantial evidence requires "more than a mere scintilla" of evidence.  Id. (quoting Consol. Edison

7

of N.Y. v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938)) (internal quotation mark omitted).  The hearing officer "must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Gravel v. Barnhart, 360 F. Supp. 2d 442, 444-45 (N.D.N.Y. 2005) (Sharpe, J.) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).

The Court ought review the hearing officer's legal conclusions, and "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguabl[y] supported by substantial evidence, the Commissioner's decision may not be affirmed."  Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.).

**B.   Social Security Disability Standard**

An individual is deemed to have a disability if she cannot "engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration has established a three-step sequential analysis to determine whether an individual under the age of eighteen is disabled.  See 20 C.F.R. § 416.924(a).

First, the hearing officer must determine whether a claimant is engaged in substantial gainful activity. See id. Second, the hearing officer must determine whether the claimant has a severe impairment or a combination of impairments considered severe. See id. Third, the hearing officer must determine whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed under Appendix 1 of the regulations.[5] See id.; see also id. § 416.925(a). If each of the steps previously discussed is met and the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months, the claimant is presumed to be disabled. Otherwise the claimant is presumed to be not disabled and the analysis ends. See id. § 416.924(d).

To determine whether the claimant's impairment is functionally equivalent to one in the statutory listings, the claimant's functioning is assessed in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. § 416.926a(b)(1). The assessment is based on the comparison between the claimant's performance of

---

[5] The listed impairments are codified at Part 404, Subpart P, Appendix 1 of the regulations. Id. § 416.925(a).

activities and that of other children of the same age without
impairments and focuses particularly on how appropriately,
effectively, and independently the claimant performs activities.
Id. § 416.926a(b).  The claimant's impairment(s) functionally
equals one in the listings if it results in "marked limitations"
in two domains of functioning or an "extreme limitation" in one
domain.  Id. § 416.926a(d).  The regulations define a "marked
limitation" as a serious interference with a claimant's ability
to independently initiate, sustain, or complete activities and
applies to limitations that are "more than moderate" but "less
than extreme."  Id. § 416.926a(e)(2)(i) (internal quotation marks
omitted).  A claimant has an "extreme limitation" in a domain
when her impairment interferes very seriously with her ability to
independently initiate, sustain, or complete activities and the
limitation is "more than marked."  Id. § 416.926a(e)(3)(I)
(internal quotation marks omitted).  This rating is intended for
the worst limitations.  Id.

## III. THE HEARING OFFICER'S DECISION

First, the hearing officer analyzed the record as to whether
J.H. has engaged in any substantial gainful activity, the first
step of the aforementioned analysis. Admin. R. at 11.  The
hearing officer determined that J.H. has not done so at any time
relevant to his decision.  Id.  Next, the hearing officer
satisfied the second step of the analysis by finding that J.H.'s

alcohol-related neurodevelopmental disorder, ADHD, learning disability, sensory integration disorder, mood instability with aggressiveness, PTSD, and adjustment disorder were medical impairments. Id. at 11-13. He classified those impairments as "severe" under the regulations. Id. at 13. Then, the hearing officer compared J.H.'s severe impairments with the requirements set out in sections 112.04 and 112.11 of the Listing of Impairments, Appendix 1 to Subpart P of 20 C.F.R. Part 404, as the third step of the analysis requires. Id. The hearing officer found that the impairments do not meet or medically equal such requirements. Id. Thus, the hearing officer analyzed whether J.H. has an impairment or combination of impairments that functionally equals the aforementioned listings. Id.

The hearing officer reviewed the record with respect to J.H.'s functional limitation in each of the six domains and determined that J.H. has a marked limitation in the "interacting and relating with others" domain, no limitation in the "moving about and manipulating objects" domain, and a less than marked limitation in the remaining four domains. Id. at 14-23.

In the "acquiring and using information" domain, the hearing officer, inter alia, considered J.H.'s test result in the WISC-IV intelligence test in which she scored in the average to low average range. Id. at 15. He also considered teachers' evaluations from the 2007-2008 and 2008-2009 school years that

11

attested that J.H. had no serious problems and no very serious problems, respectively. Id. at 15-16.

The hearing officer considered the record of J.H.'s 2008 IEP and evaluations by her special education teachers and treating psychiatrist to assess J.H.'s functioning in the "attending and completing tasks" domain. Id. at 16-17. He determined that, while J.H. needed assistance in getting her materials ready and completing assignments, she can overcome her limitation in attending and completing tasks. Id. at 17.

The hearing officer concluded that J.H. has a marked limitation in the domain of "interacting and relating with others." Id. at 19. The facts that J.H. had shown aggressive behavior at home over the course of several years as Smith described and her treating psychiatrist noted and that she displays domineering tendencies at school led the hearing officer to reach this conclusion. Id. at 18-19.

The hearing officer considered opinions of a state agency review physician, a consultative examiner, and the then current special education teacher to find that J.H. has no limitations in the "moving about and manipulating objects" domain. Id. at 20.

According to the hearing officer's analysis, J.H. has a less than marked limitation in the "caring for yourself" domain. Id. at 21-22. He took into account Smith's and a special education teacher's observation that J.H. becomes frustrated easily when

12

doing her homework but also acknowledged medical opinions of state agency review, consultative, and treating physicians that noted J.H.'s good personal hygiene.  Id.

Finally, the hearing officer determined that J.H. has a less than marked limitation in the "health and physical well-being" domain, noting that while her impairments "could reasonably be expected to produce the alleged symptoms . . . [their alleged] intensity, persistence and limiting effects . . . are not entirely credible to the extent they are inconsistent with her medical and academic records."  Id. at 22-23.

## IV.   ANALYSIS

Smith contends that the hearing officer erred by not giving J.H.'s treating psychiatrist's opinion controlling weight and substituting his own opinion for that of a treating medical professional in his analysis of her impairments.  Pl.'s Br. 15, ECF No. 15.  She specifically finds fault with the hearing officer's conclusions that J.H. has only a marked limitation in the "interacting and relating with others" domain (Issue I), as well as a less than marked limitation in the "acquiring and using information" domain (Issue II), the "attending and completing tasks" domain (Issue III), and the "health and physical well-being" domain (Issue IV).  Id.

### A.   The Hearing Officer Erroneously Failed to Give Adequate Weight to the Treating Psychiatrist's Opinion

Unlike a judge presiding over an adversarial proceeding, the

13

hearing officer in a benefits proceeding has an affirmative duty to develop the medical record. <u>Pratts</u> v. <u>Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996). This duty prescinds from the "remedial purpose underlying the Act." <u>Crysler</u> v. <u>Astrue</u>, 563 F. Supp. 2d 418, 432 (N.D.N.Y. 2008). The regulations, 20 C.F.R. sections 404.1512(d) and 416.912(d), specify as follows: "Before [a hearing officer] make[s] a determination that [a claimant] [is] not disabled, [he] will develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [his] application . . . ." 20 C.F.R. §§ 404.1512(d), 416.912(d).

Furthermore, the hearing officer ought explain the weight given to each source. <u>See</u> 20 C.F.R. § 404.1527(e)(2)(ii) ("[T]he [hearing officer] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [hearing officer] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration].").

According to the "treating physician rule," a treating physician's medical opinion is given more weight than nontreating sources, if not controlling weight. 20 C.F.R. § 404.1527(c)(2) ("Generally, [the Commissioner] give[s] more weight to opinions

from [a claimant's] treating sources . . . . If [the
Commissioner] find[s] that a treating source's opinion . . . is
well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in [a claimant's] case record, [he] will
give it controlling weight."). The hearing officer must "give
good reasons" to explain the weight given a treating physician's
opinion. Id.; see also Carlantone v. Astrue, No. 08 Civ.
07393(SHS), 2009 WL 2043888, at *5 (S.D.N.Y. July 14, 2009)("The
[hearing officer] is required to explain why and how he weighed
the evidence, especially if the opinion of the treating physician
is not given controlling weight."); Longbardi v. Astrue, No. 07
Civ. 5952(LAP), 2009 WL 50140, at *27 (S.D.N.Y. Jan. 7, 2009)
(noting that if the hearing officer's decision denies the
claimant benefits, it must "be sufficiently specific to make
clear to any subsequent reviewers the weight the adjudicator gave
to the treating source's medical opinion") (quoting Disarno v.
Astrue, No. 06-CV-0461-JTC, 2008 WL 1995123, at *4 (W.D.N.Y. May
6, 2008)) (internal quotation mark omitted).

Nonexamining sources, on the other hand, are to be treated
less deferentially, and their weight "will depend on the degree
to which they provide supporting explanations for their
opinions." 20 C.F.R. § 404.1527(c)(3).

In his decision, the hearing officer did not mention J.H.'s

treating physicians Dr. Stuppel and Dr. Gregory, and, accordingly, it is not clear whether he has considered any treatment notes of those two physicians and given their medical opinions any weight.  The hearing officer acknowledges Dr. Tinio to be J.H.'s treating psychiatrist; however, he fails to discuss how much weight he accorded Dr. Tinio's opinion and only gave Dr. Tinio's opinion cursory treatment in his decision.  Admin. R. at 11.  If the hearing officer gave any weight to Dr. Tinio's evaluation, his decision does not convey that he accorded it the heightened or even controlling weight it deserves pursuant to the regulations.  This error alone is independent ground for remand.  See Carlantone, 2009 WL 2043888, at * 5 (considering remand necessary when the hearing officer "briefly discusses [other source's] opinions but fails to explain adequately how they are weighed or why he weighed them as he did").

The absence of any discussion of weight accorded to the treating physicians and psychiatrist is even more apparent in light of the hearing officer's decision to give "some weight" to consultative examiner Dr. Noia's opinion based on a single encounter and examination, as well as "some weight" to State Agency review physician Dr. Prowda's nonexaminative review of the record.  Admin. R. at 14.

   **B.    Issue I -- The Hearing Officer's Decision that J.H. Has a Marked Limitation in the "Interacting and Relating with Others" Domain Is Inconsistent with the Treating Psychiatrist's Global Assessment of Functioning Score**

16

**Evaluations**

Only the worst limitations in any domain amount to an "extreme limitation" finding, and such a finding requires a very serious impairment of the claimant's abilities.  20 C.F.R. § 416.926a(e)(3)(i); _supra_ section II.B.  The hearing officer considered evidence of J.H.'s teachers' and treating psychiatrist's opinions that suggest that J.H. does not display such aggressive behavior at school or during doctor's visits as she does during interaction with her aunt.  Admin. R. at 19.  The hearing officer's conclusion that J.H. has a marked limitation in the "interacting and relating with others" domain appears sound as to the evidence considered, weight given to the evaluating sources, and assessment of Smith's testimony.  But Dr. Tinio assessed J.H. with Global Assessment of Functioning scores between 50 and 40, which represent a moderate to strong degree of interference in functioning in most social areas.  _Id._ at 185, 327, 370-373, 386, 427.  The hearing officer failed to consider Dr. Tinio's GAF score assessment and failed affirmatively to develop the record as to the grounds for Dr. Tinio's evaluation.  Thus, the record will have to be completed to further elucidate Dr. Tinio's expert opinion as to J.H.'s impairments.

C.   **Issue II -- The Hearing Officer Erred in Concluding that J.H. Has a Less than Marked Limitation in the "Acquiring and Using Information" Domain**

The hearing officer recounted the far-reaching

17

accommodations made for J.H. to enhance her everyday schoolwork and test-taking but failed to put these into context with J.H.'s overall functioning in the "acquiring and using information" domain.  The regulations make clear that if claimants receive the benefit of a structured or supportive setting, such as a special education program with one-on-one teacher-student interaction, their need for such accommodations and the degree of limitation in functioning outside this setting must be considered.  20 C.F.R. § 416.924a(b)(5)(iv)(C).  The record indicates that J.H. has obvious difficulty reading and comprehending, as well as serious problems solving math problems at grade level and learning new material.  Admin. R. at 238.  According to her special education teacher Ms. Bartlow, J.H. "requires information to be explained several times before she comprehends, especially in math class."  Id.  The fact that J.H. cannot function at grade level in a fundamentally important subject like mathematics, in spite of the highly structured and supporting environment of her special education program and a student-teacher ratio of thirteen to three, strongly indicates a marked limitation in the "acquiring and using information" domain.  See Juckett ex rel. K.J. v. Astrue, 09-CV-708 (FJS/VEB), 2011 WL 4056053 at *10 (N.D.N.Y. June 29, 2011) (Bianchini, M.J.)(noting that the hearing officer was "obligated to consider Claimant's level of functioning outside of her structured educational environment"),

adopted by 1:09-CV-708 (FJS/VEB), 2011 WL 4055296 (N.D.N.Y. Sept. 12, 2011).

Furthermore, the hearing officer did not consider Dr. Tinio's medical opinion regarding this domain, although he ought have given it considerable weight. See supra section IV.A. Dr. Tinio described J.H.'s insight and judgment as "poor," noting in a later evaluation that she "continued to show concrete thinking and would interpret things inappropriately." Admin. R. at 371, 427. Likewise, Dr. Gregory, J.H.'s treating physician, observed that J.H. "functions in a very direct, concrete manner" and "things that she says and things that she hears must be absolute and literal." Id. at 416. This concrete way of thinking is bound to impair her performance in school, where she must engage in abstract thinking or relate to the opinions of others. See 20 C.F.R. § 416.926a(g)(2)(iv) ("[The claimant] should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [her] own ideas, and by understanding and responding to the opinions of others."). The hearing officer ought further consider the medical opinions of these treating sources who have known J.H. over the course of several years.

D.   **Issue III -- The Hearing Officer's Findings of Fact Do Not Support the Conclusion that J.H. Has a Less than Marked Limitation in the "Attending and Completing Tasks" Domain**

The hearing officer's conclusion that J.H. has a less than

19

marked limitation in this domain is not consistent with the administrative record, and his findings of fact do not seem to support this conclusion. The sources that speak to J.H.'s ability to attend and complete tasks like homework or class projects note obvious problems focusing long enough to finish a task or to complete a homework assignment. Admin. R. at 227, 239. The IEP and Ms. Bartlow's teacher evaluation indicate that J.H. needs help organizing her schoolwork and requires redirection from teachers. Id. at 176, 239. The hearing officer remarked that Dr. Tinio did not provide specific symptoms related to his ADHD diagnosis, but neither did the hearing officer seek to complete the record by requesting such information from the claimant's treating psychiatrist. See id. at 17.

Furthermore, the regulations ask a hearing officer to consider the effect of medication when evaluating the effects of the impairment on the claimant's functioning. 20 C.F.R. § 416.924a(b)(9)(i). The hearing officer neglected to do this. J.H. suffers from ADHD and has been on medication to remedy the attention disturbing effects of her impairment. See Admin. R. at 427. While mention of the daily Focalin dosage and its significant side effects was made, it is not apparent how this finding led to the conclusion of a less than marked limitation in attending and completing tasks. Id. at 17.

E. **Issue IV -- The Hearing Officer's Conclusion that J.H. Has a Less than Marked Limitation in the "Health and**

20

**Physical Well-Being" Domain Is Not Supported by Substantial Evidence**

The hearing officer failed to consider available evidence and misread the teachers' evaluations when concluding that J.H. has a less than marked limitation in this domain.  He determined that a finding of less than marked limitations in health and physical well-being was "consistent with the evaluation of Ms. Tirinato and Ms. Bartlow."  Admin. R. at 22.  In fact, both special education teachers indicated on their questionnaires that they did not know whether the child took any medication.  Id. at 231, 243.  Likewise, they reported that they were not able to answer any of the other questions relating to this domain, with the exception of the question of whether J.H. missed school for extended periods of time, which they negated.  Id.  Hence, the record at this point does not provide support for any conclusion, let alone an unfavorable one.  See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) ("The  requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even -- and perhaps especially -- when those dispositions are unfavorable.").

Furthermore, the hearing officer relied on Dr. Noia's opinion that J.H. was aware of dangers and took precaution in an age-appropriate manner.  Admin. R. at 22.  This opinion of a one-time consultative examiner stands in contrast to several incident reports throughout the record that imply that J.H. did

not take such precautions in situations in which she was enraged
(for example, running in front of a moving vehicle, hitting her
aunt with a telephone, damaging doors, and breaking objects).
See id. at 346-47, 370, 379.

Thus, the hearing officer's conclusion was not supported by
substantial evidence, as a reasonable mind faced with such
inconsistencies could not deem the evidence relied upon adequate
to support the conclusion.

## V. REMAND

The Act grants a court the power to "enter . . . a judgment
affirming, modifying, or reversing the decision of the
Commissioner . . . with or without remanding the cause for a
rehearing." 42 U.S.C. § 405(g). In this case, the determination
of whether J.H. is disabled is not obvious or clear-cut. Remand
for further consideration is appropriate where, as here, there is
not substantial evidence to support the hearing officer's
decision, yet the record does not support an outright reversal.
See Silberman v. Astrue, No. 08 Civ. 03398 (RMB)(THK), 2009 WL
2902576, at *15 (S.D.N.Y. Aug. 14, 2009) (Katz, M.J.) (holding
that remand is required where the record did not demonstrate that
claimant was "clearly disabled" but the hearing officer failed to
"address all of the evidence"), adopted by No. 08 Civ. 3398
(RMB)(THK), 2009 WL 2778245 (S.D.N.Y. Sept. 1, 2009); Carlantone,
2009 WL 2043888, at *5 (remanding for further consideration where

22

treating physician's opinion was not given controlling weight and where such a determination was made without explanation).  As the Second Circuit reasoned in <u>Halloran</u> v. <u>Barnhart</u>, 362 F.3d 28 (2d Cir. 2004) (per curiam) :

> We do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physicians [sic.] opinion and we will continue remanding when we encounter opinions from [hearing officers] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.

<u>Id.</u> at 33.  Accordingly, this case is remanded for further consideration as to whether J.H.'s impairments functionally equaled one of the listings and thus rendered her disabled.

## V.    CONCLUSION

Wherefore, for the foregoing reasons, it is hereby

ORDERED that the Commissioner's determination is REVERSED; and it is further

ORDERED that the hearing officer's decision denying disability benefits is REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: March 29, 2013


                         WILLIAM G. YOUNG
                         DISTRICT JUDGE

                              23